### Chicago & E. I. R. R. Co. v. Mark A. Nichols, Adm.

1. ORDINARY CARE—*Absence of, Prevents a Recovery.*—When a person in a buggy, drawn by a horse driven by him, in approaching a railroad track in front of a moving train, disregards the warnings of the flagman stationed at the street crossing, attempts to beat the train over the crossing and is killed, he takes the chances which the exercise of

ordinary care on his part would have avoided, and his personal representatives can not recover.

**Trespass on the Case.**—Death from negligent act.  Tried in the Circuit Court of Kankakee County; the Hon. JOHN SEWALL, Judge, presiding.  Verdict and judgment, $1,000, for plaintiff.  Appeal by defendant.  Heard in this court at the December term, 1897.  Reversed, with a finding of facts.  Opinion filed February 28, 1898.

WILLIAM R. HUNTER, attorney for appellant; THOMAS P. BONFIELD, ESQ., of counsel.

E. P. HARNEY, attorney for appellee; PADDOCK & COOPER, of counsel.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case to recover damages for the death of appellee's intestate, William Nichols, deceased, who was killed by one of appellant's train of cars, at the intersection of its railroad with Indiana street, in the city of Momence, Kankakee county, on July 16, 1896.

On the first trial of the cause, there was a disagreement of the jury.  On the second trial appellee recovered a verdict and judgment for $1,000, a motion for a new trial being overruled.

The declaration originally contained six counts, but a demurrer being sustained to the first count, the cause was tried on the remaining five counts.  The second, third and fourth charged negligence in failing to give the statutory signals and in running the train at a greater rate of speed than that allowed by the city ordinance.  The fifth count charges that the defendant "carelessly and improperly flagged the deceased upon the crossing, and then improperly obstructed the passage of said crossing by hindering and attempting to stop the horse" drawing the buggy in which deceased was riding along and upon the public street, so that the train ran upon and struck deceased and killed him.  The sixth count is similar except that it does not charge that the deceased was improperly flagged upon the crossing.

The evidence taken upon the trial shows substantially the following state of facts:

Deceased was a man about seventy years old, living in the city of Momence, but operating a farm some miles southeast of the city, which he visited very frequently, and in doing so passed over the appellant's railroad tracks, and his son, Mark A. Nichols, testifies that his father passed over this same crossing where the accident occurred every day. There were at the point in question six tracks, besides the "Y" track, which run northeasterly across the highway known as Indiana street, which street runs east and west.

Appellant kept stationed at this crossing a flagman, who was on duty at the time of the accident. The evidence shows he knew the deceased, and had frequently flagged and stopped him on former occasions when Mr. Nichols was about to cross the tracks.

About three o'clock on the afternoon of July 16, 1896, the deceased, driving a horse attached to a buggy in which he was riding, approached the railroad crossing at a sharp trot, just as one of appellant's passenger trains was coming into the city of Momence from the south. The flagman was at his post carrying a white flag, as prescribed by the rules of the company, which he waved across the track as a signal for deceased to stop, but the latter seems to have paid no attention to the signal and kept driving on toward the crossing until he got within a few feet of the flagman, who then called to the deceased to stop, but instead of doing so he struck his horse with a whip, turned in toward the north, making a circle around the flagman, and, undertaking to cross the track in front of the approaching train, was caught and killed.

The train appears to have been running at the rate of fifteen to twenty miles an hour. No ordinance was put in evidence regulating the speed of trains in the city of Momence. There was the usual conflict in the evidence as to whether or not the statutory signals were given, but we think a preponderance of the evidence shows the servants of appellant were not guilty of any negligence in this

regard and that the signals were properly given by blowing the whistle and ringing the bell as required by the statute.

Much complaint is made by appellant as to the admission of incompetent evidence and the giving of erroneous instructions. We are of the opinion, however, that even were all the evidence held competent, there is still a failure on the part of appellee to prove a cause of action. The proof of any negligence on the part of appellant is extremely unsatisfactory, while the want of due care on the part of the deceased, and his reckless disregard for his own safety, so clearly appears, that there can be no recovery. The flag signals given by the flagman could not fail to have attracted the notice of the deceased had he paid the slightest attention, but these he utterly disregarded, as well as the order to stop given when he was only fifteen feet from the flagman. Had he obeyed the order he would have been safe; but instead of doing so he whipped up his horse and attempted to beat the train over the crossing. This is but one of many such instances where persons have come to their death by taking chances which ordinary care would have avoided. In such a case, if disaster comes, the law affords no remedy. In this case we fail to see what more appellant could have done to avoid the accident than was done, and on the other hand the slightest care on the part of deceased would have saved his life. Under this view of the case we deem it unnecessary to discuss the alleged errors in admission of evidence, or in the giving and refusing instructions, except to say that in our opinion the instruction asked by appellant directing a verdict in its favor should have been given.

We think the judgment must be reversed.

FINDING OF FACTS TO BE MADE A PART OF JUDGMENT.

We find as a fact that the death of deceased was not the result of any negligent act or omission on the part of appellant or any of its servants.

We further find as a fact, that the deceased came to his death from an entire failure to exercise ordinary care on his own part, and an utter disregard for his own safety.